IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY NELSON, et. al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 07-4436 |
| | : | |
| v. | : | |
| | : | |
| DeVRY, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

Jones, J.                                                                                      April 23, 2009

Before the Court is Defendant DeVry University's ("DeVry") Motion for Summary

Judgment (Docket No. 50).  Because there are no genuine issues of material fact and DeVry is

entitled to judgment as a matter of law, the motion will be granted.

## I.      Facts and Procedural Posture[1]

DeVry is a corporation that operates higher education institutions in multiple locations,

including campuses in New Jersey and Pennsylvania.  DeVry requires that individuals seeking

employment with the company complete written applications prior to being hired.  These

applications ask applicants to disclose if they have ever been convicted of a felony or

---

[1] The Court notes at the outset that Plaintiff's Response to DeVry's Statement of
Undisputed Facts, in addition to admitting the vast majority of those facts, fails to comply with
the Court's Policies and Procedures.  Instead of providing any substantive responses to DeVry's
facts, Plaintiffs rely upon conclusory disagreements without any citation to the record.  Plaintiff's
brief in opposition to the Motion for Summary Judgment similarly lacks record support.  It is not
the role of this Court to pick through the record on behalf of Plaintiffs and find evidence to
support their conclusory disagreements.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256
(1986); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); In re Jacobs, 381 Bankr. 147, 160
n.21 (Bankr. E.D. Pa. 2008).  Even taking the facts in the light most favorable to the moving
party, Plaintiffs cannot create a disputed issue of material fact by simply registering abstract
disagreement with DeVry's record-supported recitation of facts.

misdemeanor.  DeVry also conditions employment upon the successful completion of an

independent background check of applicants, and DeVry contracts with a third-party to conduct

those checks on its behalf.

Plaintiff Anthony Nelson ("Nelson") commenced his employment with DeVry in May of

1999.  Nelson is African-American.  Nelson received multiple promotions over time, eventually

becoming an Assistant Director of IT responsible for all of DeVry's IT departments in

Pennsylvania.  Prior to commencing his employment, Nelson completed a written application.

By signing and completing the application, Nelson represented that all of the information entered

on the application was true and correct and that he understood that any false statements or

omissions of information would be reason for discharge.  In response to the question on the

application regarding whether Nelson had ever been convicted of a felony or misdemeanor,

Nelson replied "No."  DeVry's background check of Nelson did not reveal a criminal

background.  However, Nelson had previously been convicted of wrongful impersonation and

theft (1990/91), simple assault (1991), shoplifting (1991/93), and disorderly persons and

obstruction of justice (1997).  Nelson served a year of probation for the obstruction of justice

conviction.[2]  At no time did Nelson ever inform DeVry that he had a criminal history.

Plaintiff Kenneth Jones ("Jones") commenced his employment with DeVry in July of

2002.  Jones is African-American.  Jones was a first shift maintenance technician who had keys

and access to every building on DeVry's Fort Washington, Pennsylvania campus.  In June of

2004, a woman complained that Jones was harassing her via his work computer and telephone.

---

[2] Defendant also refers to an investigation by the Asbury Park police and the Federal
Bureau of Investigation regarding a falsified employment application and incomplete firearms
permit.  However, because these do not appear to have resulted in a conviction, they are not
relevant here.

Devry investigated the matter and concluded the allegations were true.  Although DeVry could have terminated Jones, it instead chose to issue written discipline.  In July 2004, DeVry placed Jones on paid administrative leave after Jones disclosed that he was facing assault charges in state court raised by the same woman who accused him of harassing her.  In September 2004, DeVry permitted Jones to return from his paid leave even though his legal issues were not fully resolved.  Prior to commencing his employment, Jones completed a written application.  By signing and completing the application, Jones represented that all of the information entered on the application was true and correct and that he understood that any false statements or omissions of information would be reason for discharge.  In response to the question on the application regarding whether Jones had ever been convicted of a felony or misdemeanor, Jones replied "No."  DeVry's background check of Jones did not reveal a criminal background. However, Jones had been convicted of disorderly conduct in 1989.[3]  At no time did Jones inform DeVry that he had been convicted of disorderly conduct.

DeVry has an Equal Opportunity Employment Policy and a Policy Against Harassment and Retaliation, as well as a policy that all employment with DeVry was at-will and could be terminated at any time for any reason.  These policies are memorialized in the Employee

---

[3] In New Jersey, classification of crimes as misdemeanors, disorderly persons offenses, and petty disorderly persons offenses is fact-specific and statute-specific.  See N.J.S.A. §§ 2C:1-4; 2C:43-1 (2005).  Although Plaintiffs have denied that Jones had been convicted of a felony or misdemeanor, Plaintiffs have provided no factual information or citations to any New Jersey court records in support of a conclusion that the particular crime for which Jones was convicted was indeed a disorderly or petty disorderly offense.  Nor has Plaintiff adduced any record evidence that disputes DeVry's belief that Jones had been convicted of a misdemeanor.

3

Handbook.[4]  DeVry's Equal Opportunity Employment Policy provides that DeVry shall treat all employees and applicants for employment without unlawful discrimination as to, *inter alia*, race, in all decisions (including termination and conditions of employment).  DeVry's Policy Against Harassment and Retaliation provides that DeVry prohibits harassment as to, *inter alia*, race, and that DeVry prohibits retaliation against any employee that complained of harassment.  DeVry considered violations of its harassment policy as well as violations of any local, state or federal laws to be gross misconduct which could result in immediate discharge.

On August 25, 2005, DeVry received a shipment of seven laptops at its Fort Washington campus.  The laptops were placed in a locked server room located in the IT office.  On August 31, 2005, Bryan Roth ("Roth"), a laptop support specialist, discovered that three of the laptops were gone.  The missing laptops were reported to DeVry.[5]  DeVry notified the Upper Dublin Police Department of the thefts, and they initiated an investigation.  DeVry also commenced its own investigation.  Director of Human Resources Deborah Maher ("Maher") (who was based at DeVry's Oak Brook, Illinois headquarters) directed Kim Chernosky, the Human Resources Manager at the Fort Washington, Pennsylvania campus, to conduct DeVry's own investigation.  As part of the investigation, Chernosky drew up a list of eight employees who had keys to the secure server room where the laptops had been stored.  The individuals on the list included

---

[4] Plaintiffs appear to make an attempt to create a genuine issue of material fact by asserting that they never received a copy of the employee manual that memorializes these policies.  However, (a) Plaintiffs do not dispute that the policies existed and (b) Plaintiffs nowhere argue that they were not aware of them.  Accordingly, the court does not find this to be a genuine issue of material fact upon which the case could turn before a jury.

[5] There is a dispute as to whether Roth or Nelson reported the missing laptops to DeVry.  This is not material.

Barbara Hurley-Yetman, President of the Fort Washington campus; Dennis Matthews, Dean of

Finance and Accounting; Gary Hinchee, Facility Manager and Jones's supervisor; Nelson; Jones;

Roth; Victor Tente, LAN Technician; and Sebastian Hayes, a temporary facilities department

assistant.  Hayes, Nelson and Jones are African-Americans; the remaining five individuals are

Caucasian.

Maher investigated all of the suspects.  She learned that Hurley-Yetman, Matthews and

Hinchee had been out of town at the time of the theft, did not have knowledge that the laptops

had been received and/or did not know that the laptops had been stored in the server room,

Maher removed these individuals from the list of suspects.  Accordingly, there were five

remaining suspects – Tente, Roth, Hayes, Nelson, and Jones.  All of the remaining employees

were questioned.  Then, based upon a number of factors, Maher narrowed the focus of the

investigation to Tente and Roth.  Based upon further questioning of Tente and Roth, however,

Maher concluded that it was unlikely that either was involved in the theft of the laptops.

Nevertheless, Maher directed Chernosky to provide the names of the five remaining employees

who had keys to the server room, including Roth and Tente, to the investigating officer -

Detective Kenneth Whisler ("Whisler") – from the Upper Dublin Police Department.[6]

After obtaining the names of the five remaining suspects who were employees, Whisler

informed DeVry that he had discovered that two of the employees had been convicted of crimes.

_____

[6] Plaintiffs weakly attempt to create an issue of material fact by stating that the facts in
several paragraphs are "denied" and making a conclusory statement that Plaintiffs were "singled
out because of their race."  See Plaintiffs' Response to Def.'s Statement of Undisputed Material
Facts at ¶¶ 32-35. These bald assertions, offered without any citations to record evidence do not
create a genuine issue of material fact.  They are, at very best, legal arguments, and, at worst,
generalized, unsupported factual allegations.

The two employees were Nelson and Jones.  Maher reviewed Nelson and Jones's employment applications and saw that neither had disclosed a criminal background.  Maher directed Chernosky to interview both men and ask them about the information related to their criminal pasts received from Whisler.  Chernosky conducted these interviews in September of 2005.

During Chernosky's interview with Nelson, Nelson refused to answer questions regarding his criminal background.[7]  During Chernosky's interview with Jones, Jones told her that he  didn't think his criminal background was any of her business.[8]  After Chernoksy questioned Jones, Jones filed a Charge of Discrimination with the Pennsylvania Human Rights Commission alleging race discrimination.  Chernosky reported the results of her interviews with Jones and Nelson to Maher.  Maher decided to terminate Jones and Nelson for falsifying their employment applications.[9]  Chernosky advised both Jones and Nelson of their terminations in separate

---

[7] Plaintiffs deny this fact, and offer two contradictory assertions.  The first is that Plaintiff had previously discussed his criminal background with another DeVry employee.  Plaintiffs offer no record citation to establish this fact.  The second is the legal conclusion that "as Plaintiff [sic] had not been convicted of a felony or misdemeanor, he had not falsified his employment record."  See Plaintiffs' Response to Def.'s Statement of Undisputed Material Facts at ¶¶ 37.  Nowhere, including in Plaintiffs' supporting brief, do Plaintiffs provide any record support or argument as to this point.  It is merely a self-serving, unsupported assertion.  As such, neither of these statements alone creates a genuine issue of material fact.

[8] Plaintiffs admit this fact but qualify it "to the extent that the conviction did not equate to a felony or misdemeanor."   See Plaintiffs' Response to Def.'s Statement of Undisputed Material Facts at ¶¶ 38.  Again, nowhere, including in Plaintiffs' supporting brief, do Plaintiffs provide any record support as to this point.  It is merely a self-serving, unsupported assertion.  As such, this statement alone does not create a genuine issue of material fact.

[9] Plaintiffs admit the fact but qualify the admission by denying that the Plaintiffs' falsified their employment applications.   See Plaintiffs' Response to Def.'s Statement of Undisputed Material Facts at ¶¶ 40, 46, 50, 60, 62, 63.  Again, nowhere, including in Plaintiffs' supporting brief, do Plaintiffs provide any record support as to this point.  It is merely a self-serving, unsupported assertion.  As such, this statement alone does not create a genuine issue of material fact.

termination meetings on October 27, 2005.  Neither Nelson nor Jones raised any complaints of discrimination in their respective termination meetings.  Jones and Nelson both concede that the reason provided to them for their terminations was that they had falsified their employment applications.[10]

Following their terminations, Plaintiffs commenced the instant action in which they claim that they were discriminated against on the basis of their race.  In his deposition, Nelson claimed that his termination had to be discriminatory because DeVry terminated two African-Americans who had access to the secure room where the laptops were stored.  In his deposition, Jones asserted that DeVry discriminated against him based on his race because just two African-Americans were terminated for falsifying information on their employment application.  However, Jones admitted that he does not know the extent to which other Caucasian employees were questioned as part of DeVry's investigation into the theft of the laptops.  Furthermore, Jones admitted that he does not know of any non-African-American employees who failed to list a conviction on their employment applications and were not terminated.

Nelson never complained to DeVry about race discrimination at any time during his employment.  Aside from making the PHRC charge, Jones never complained to DeVry about race discrimination at any time during his employment.

Prior to Nelson and Jones, there have been Caucasian employees whose background checks did not reveal any criminal backgrounds and who did not disclose their criminal

---

[10] In another attempt to create a disputed issue of fact, Plaintiffs deny this statement and state that the pretext for their firings was falsifying employment applications.  See Plaintiffs' Response to Def.'s Statement of Undisputed Material Facts at ¶¶ 42, 45.  This is an assertion of law that does not properly create an issue of fact.  Aside from that, Plaintiffs ignore the fact that Defendant's record citation for this fact is Plaintiffs' own depositions.

backgrounds on their employment applications, but who DeVry later discovered had been convicted of a felony or misdemeanor.  In those situations, Maher also made the decision to terminate the employment of those individuals.  Moreover, during the time that Maher worked for DeVry, there has been only one occasion in which DeVry has learned that an employee has failed to disclose a felony or misdemeanor on his employment application and Maher decided not to terminate that employee.  That individual was African-American.  During the time that Maher has worked at DeVry, Devry has taken employment action against Caucasian employees based upon the results of an investigation conducted by a police department.  Finally, Maher never determined, nor did she ever receive any information that Hinchee, Hurley-Yetman, Matthews, Roth, Hayes, or Tent had falsified their respective employment applications.

## II.    Summary Judgment Legal Standard

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a summary judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  In order to defeat a motion for summary judgment, disputes must be both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322-23.  An issue is genuine if the fact

finder could reasonably return a verdict in favor of the non-moving party with respect to that issue.  Anderson, 477 U.S. at 248.  In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion."  Seigel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.   Discussion

In this action, Plaintiff seeks relief under both Title VII, 42 U.S.C. § 2000e, *et. seq*. ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et. seq*. ("PHRA").  The two acts are substantially similar and while the Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts. Kelly v. Drexel University, 94 F.3d 102, 105 (3rd Cir. 1996) (citing, *inter alia*, Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1083-84 (3rd Cir. 1995) and Chmill v. City of Pittsburgh, 412 A.2d 860, 871 (Pa. 1980)).

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  An "employer" within the meaning of Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person."

To establish employment discrimination, it must be shown that the employer bore a racially discriminatory animus against the employee and that this animus manifested itself in

some challenged action, whether it be dismissal, failure to promote, or failure to hire.  Lewis v.

University of Pittsburgh, 725 F.2d 910, 914 (3rd Cir. 1983).  To prevail, a plaintiff may pursue

either of two courses.  If the plaintiff possesses direct evidence of discrimination, he may pursue

what is known as a "mixed motives" case.  Williams v. Greyhound Lines, Inc., No. Civ. A.

97-6997, 1998 WL 551981, at *3 (E.D. Pa. Aug. 11, 1998).  Direct evidence of discrimination

involves conduct or statements by persons involved in the decision-making process that may be

viewed as directly reflecting a discriminatory attitude, and would not include stray remarks in the

workplace.  Id.  In such a case, if plaintiff demonstrates that an illegal consideration, such as race,

was a substantial factor in the decision, the burden shifts to the defendant to prove that the

decision would have been the same absent consideration of the illegitimate factor.  Id.

     In the absence of direct evidence, discrimination may be shown through circumstantial

evidence.  Id.  In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the U.S. Supreme

Court delineated the basic allocation of burdens and order of presentation of proof in a

discrimination action using circumstantial evidence.  Under the McDonnell Douglas scenario, a

plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence.

Such a *prima facie* case is established when a plaintiff has shown (1) that he is a member of a

protected class; (2) he is qualified for the position; (3) but he suffered an adverse employment

action; and (4) that action was taken was under circumstances that give rise to an inference of

unlawful discrimination (such as might occur when the position is ultimately filled by a person

not of the protected class).  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir.

1999); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1066, n.5 (3rd Cir. 1996);

Waldron v. SL Industries, 56 F.3d 491, 494 (3d Cir. 1995).  Common circumstances giving rise

to an inference of unlawful discrimination include the hiring of someone not in the protected

class as a replacement, or the more favorable treatment of similarly situated colleagues outside of

the relevant class.

Once a *prima facie* case has been shown, the burden then shifts to the employer to

articulate some non-discriminatory reason for the challenged action.  McDonnell Douglas, 411

U.S. at 802.  Then, should the defendant succeed in proffering a facially legitimate reason for the

employment decision, the burden shifts back to the plaintiff-employee to demonstrate that the

reason given by his employer was not its true reason but is in fact merely a pretext for

discrimination.  Jones, 198 F.3d at 410.  Throughout, the ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated against the plaintiff remains at all times

with the plaintiff, and even when the plaintiff has proved a *prima facie* case of discrimination,

the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its

actions.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 260 (1981).

Taking this analysis one step further, the Courts in the Third Circuit have held that to

defeat a motion for summary judgment when the defendant answers the plaintiff's *prima facie*

case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some

evidence, be it direct or circumstantial, from which a fact finder could reasonably either (1)

disbelieve the employer's articulated legitimate reasons or, (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3rd Cir. 1994) (citing Ezold v. Wolf,

Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3rd Cir. 1992)); Adelman v. GMAC Mortgage

Corp., No. Civ. A. 97-691, 1997 WL 805274, at *3 (E.D. Pa. Dec. 30, 1997).

11

The plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment. Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999). See also, e.g., Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) (noting that speculation and conclusory allegations re not sufficient); Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992) ("The non-moving party must present something more than mere allegations, general denials, vague statements or suspicions."). Rather, the plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999) (citing Ezold, 983 F.2d at 527). Where the plaintiff does offer evidence that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail.

### A.    Direct Evidence

Put simply, other than the fact that they are African-Americans, Plaintiffs have not proffered *any* evidence of direct action or remarks that show their terminations were motivated by race discrimination – *i.e.*, that race was a "substantial factor in the decision" to terminate them.  Indeed, one Plaintiff has even gone so far as to acknowledge in the summary judgment record that his termination was actually due to the exposure of his criminal background.  In addition, the direct evidence actually goes the other way – it shows that while there were three African-American suspects in the theft of the laptop computers, only two – the ones with the

previously-undisclosed criminal backgrounds, were terminated.  Bald unsupported assertions aside, this simply does not a "mixed motives" case based on direct evidence make.  See, e.g., Martinez v. Fox Broad. Co., No. 06-04537, 2008 U.S. Dist. LEXIS 76047, *9-10 (E.D. Pa. Sept. 30, 2008) (plaintiff failed to present direct evidence of discrimination where he could not identify any direct actions or remarks by the decision-makers that evidenced discrimination).  Here, Plaintiffs have failed to produce direct evidence that is so revealing of discriminatory animus that it is not necessary to rely upon any presumption from the *prima facie* case as is necessary in a pretext action.

**B.     Circumstantial Evidence**

As a threshold matter, Plaintiffs have not satisfied the first element of the McDonnell Douglas test – namely, establishing a *prima facie* case.  This is true for two reasons.  First, Plaintiffs have not met the second prong of a *prima facie* case because they have not demonstrated that they were qualified for their positions.  Both Nelson and Jones had criminal backgrounds that the record indicates could have led DeVry to the belief that they were disqualified them employment (*i.e.*, that DeVry believed made them unqualified).  Furthermore, the failure of Nelson and Jones to disclose their backgrounds, as was required company policy, made them subject to the provision that they could be terminated at any time for dishonesty.  An employee who violates a company policy which results in that employee's discharge is not meeting the employer's legitimate expectations.  See, e.g., Hairston v. Runyon, No. 96-CV-8707, 1997 U.S. Dist. LEXIS 19782, *7-8 (E.D. Pa. Dec. 12, 1997) (holding that the plaintiff had not shown he was qualified for the position where he had violated his employer's legitimate policy).  Accordingly, Plaintiffs cannot establish the second prong of a *prima facie* case of discrimination.

Assuming, *arguendo*, that Plaintiff could meet the second prong, the Court also agrees with DeVry that Plaintiffs have not established the fourth prong of a *prima facie* case – namely, they have not demonstrated that their termination was made under circumstances that give rise to an inference of unlawful discrimination.  The most common way that a plaintiff can raise an inference of discrimination is by presenting evidence that he was treated differently from other similarly-situated employees.[11]  King v. School Dist. of Philadelphia, No. 00-CV-2503, 2001 U.S. Dist. LEXIS 10710, *12 (E.D. Pa. July 26, 2001).  However, the Third Circuit has rejected the notion that this is the only way the fourth requirement can be met.  Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 n.7 (3d Cir. 2003).  A plaintiff can also show that he was not hired or rehired (or terminated, as the case may be) under circumstances that raise an inference of unlawful discrimination.  Id.  Accordingly, showing that similarly situated employees outside of plaintiff's protected class were more favorably treated under similar circumstances is one way, but not the only way, to raise an inference of unlawful discrimination.  See Coleman v. Blockbuster, Inc., 2008 WL 2622912, *4 n.6 (E.D. Pa. June 30, 2008) ("In light of *Sarullo* and *Wooler*, the Court adopts the definition of the *prima facie* case that allows plaintiff to satisfy the fourth element by showing circumstances that give rise to an inference of unlawful discrimination, either by showing more favorable treatment to a specific non-minority employee or otherwise."); Brundage v. International Ass'n of Bridge, Structural and Ornamental, 2007 WL 3119856, *8, (E.D. Pa. Oct. 24, 2007) ("Although the showing required here can vary, plaintiffs

---

[11] In order to be similarly situated, the individuals compared must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it."  Bullock v. Children's Hosp. of Phila., 71 F. Supp. 2d 482, 489 (E.D. Pa. 1999).

often make out an inference of discrimination with evidence that an employer ultimately hired someone outside the protected class or treated that person more favorably.")

First, Plaintiffs have adduced no credible evidence that there were other similarly-situated individuals who were treated differently.  More specifically, Plaintiffs concede that they are unaware of any non-African-Americans who falsified their employment applications and were not terminated.  Even more generally (putting aside the qualification of application falsification and focusing solely on race), Plaintiffs have adduced no evidence that other white employees were not treated the same way or other African-American employees were targeted and/or terminated.[12]  To the contrary, Maher gave the names of five employees, three of whom were white, to Detective Whisler for further investigation.  DeVry also conducted an internal investigation during which all of the employees with keys to the server room (5 white, 3 African-American) were interviewed and evaluated.  In addition, a third African-American with keys to the server room was not terminated.[13]  Second, Plaintiffs have adduced no evidence to suggest that DeVry continued to seek out individuals with similar qualifications after terminating (and

---

[12] Plaintiffs have not even established that any other employees are proper comparators. See Helm v. Matrix Serv. Indus. Contrs., No. 07-4622, 2008 U.S. Dist. LEXIS 93153, *46 (E.D. Pa. Nov. 12, 2008) (holding that individuals who did not hold the same position as the plaintiff were not proper comparators).

[13] Indeed, the fact that the third African-American employee, Hayes, was treated in the same positive way as the Caucasian suspects cuts against race being a motivating factor in DeVry's employment decisions.  See e.g., Seldon v. Amtrak, No. 05-4165, 2007 U.S. Dist. LEXIS 81183, *14 (E.D. Pa. 2007) (holding that the fact that both African-Americans and whites received favorable treatment undercut the plaintiff's claim that the decision not to promote her was motivated by race); Hinshillwood v. County of Montgomery, No. 00-4283, 2002 U.S. Dist. LEXIS 2804, at *9 (E.D. Pa. Feb. 20, 2002) (finding that the plaintiff failed to establish a prima facie case under § 1981 when both African-Americans and whites received favorable treatment and there was no evidence that the plaintiff was treated differently because of his race).

refusing to rehire) the Plaintiffs under circumstances that raise an inference of unlawful

discrimination.  As such, Plaintiffs have not made a causal connection between his membership

in a protected class and DeVry's decision to terminate him.

Plaintiff's subjective belief that race played a role in DeVry's employment decision is

not, alone, sufficient to establish an inference of discrimination.  See Jones, 214 F.3d at 407

(plaintiff cannot rely on unsupported allegations at summary judgment).  For instance, in Sarullo,

the Third Circuit held that the plaintiff did not make a causal connection between his

membership in a protected class and his employer's failure to rehire him:  instead, the plaintiff

offered his own sworn statement that most of his co-workers knew he was Native American and

made derogatory comments to him.  Sarullo, 352 F.3d at 798.  See also Williams McCoy v. Starz

Encore Group, No. Civ. A. 02-5125, 2004 WL 356198, at *8 (E.D. Pa. Feb. 5, 2004) (the

plaintiff's belief that she was the victim of discrimination, without more, is insufficient to make

out discriminatory action).

Even construing the record as favorably to Plaintiffs as the Court reasonably can, it is

apparent that they cannot make out a *prima facie* case of discrimination because they offer little

more than their own beliefs that Defendants must have discriminated against them.  In sum,

Plaintiffs' reliance on unsupported assertions, speculation, and conclusory allegations are

insufficient to withstand a motion for summary judgment.  See, e.g., Horton v. Nicholson, 435 F.

Supp. 2d 429, 434 (E.D. Pa. 2006) (holding that the plaintiff's discrimination claims could not

succeed because the plaintiff had failed to present any evidence that the employer did not

discharge or treat individuals outside of his class more leniently for lying on their job

applications and noting that "bald assertions" that plaintiff was fired on account of race were

16

insufficient to make out a *prima facie* case necessary to survive summary judgment).

Even if one were to assume, *arguendo*, that Plaintiffs can establish a *prima facie* case, DeVry has, as the <u>McDonnell Douglas</u> framework requires, articulated a legitimate, non-discriminatory reason for Plaintiffs' termination.  Specifically, DeVry has asserted – with record support – that it terminated Jones and Nelson because it had a good faith belief that Plaintiffs had falsified their employment applications and thereby violated company policy.  <u>See</u> <u>Kellerman v. UPMC St. Margaret</u>, No. 06-cv-0528, 2008 U.S. Dist. LEXIS 10064, *25-26 (W.D. Pa. Feb. 11, 2008) (holding that withholding material information on an employment application qualified, in those circumstances, as a non-discriminatory and non-retaliatory reason for the termination of Plaintiff's employment).

Under <u>McDonnell Douglas</u>, the burden then shifts back to Plaintiffs to demonstrate that DeVry's articulated reason was a pretext – *i.e.*, that DeVry's discriminatory animus was the real reason for their termination.  <u>Fuentes</u>, 32 F.3d at 764.  To discredit DeVry's proffered reason, however, Plaintiff cannot simply show that DeVry's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, *not* whether the employer is wise, shrewd, prudent, or competent.  <u>Id</u>. at 765 (<u>citing</u> <u>Ezold</u>, 983 F.2d at 531, 533).  The federal courts "are not in the business of adjudging whether employment decisions are prudent or fair.  Instead, the sole concern is whether unlawful discriminatory animus motivated a challenged employment decision."  <u>Thrower v. Home Depot, Inc.</u>, No. 04-577, 2005 U.S. Dist. LEXIS 21389, *18 (W.D. Pa. Sept. 27, 2005).  <u>See also</u> <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 731 (3d Cir. 1995) (citing <u>Billet v CIGNA Corp.</u>, 940 F.2d 812, 825 (3d Cir. 1991)) ("The inquiry into pretext centers upon the employer's beliefs and not the employee's own

17

perceptions."). Accordingly, Plaintiffs must make a showing that meaningfully throws into question DeVry's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find those reasons "unworthy of credence," Ezold, 983 F.2d at 531, and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993) (internal quotation omitted).

Here, as DeVry cogently argues in its briefing, Plaintiffs cannot establish that DeVry's reasons for Plaintiffs' terminations were pretextual. The record reflects that DeVry obtained information from a police officer and relied upon it. Indeed, Plaintiff Nelson conceded this fact. Even if the information obtained from Detective Whisler regarding Plaintiffs' criminal backgrounds was incorrect, or even if the criminal background was of a type that Plaintiffs were not technically required to disclose, it would not matter. Stated differently, it would not matter if DeVry's investigation was faulty or its conclusions were wrong, because pretext is not demonstrated by showing simply that the employer was mistaken.[14] Instead, the record must be reviewed for behavior that could support an inference that DeVry did not act for its stated reasons. Upon review, the record reflects that, at the time Maher made the decision to terminate Plaintiffs' employment, she reasonably believed that they had falsified their employment applications, and there is nothing in the record to show that this was a fabrication. See, e.g., Kellerman, 2008 U.S. Dist. LEXIS 10064 at *25-26 (holding that where employer's policy provided that misrepresentation on employment application was sufficient cause for dismissal,

---

[14] As such, it is irrelevant whether DeVry was wrong or mistaken about whether Jones's conviction was a misdemeanor or petty offense, see note 3, *supra*, as well as whether DeVry was ignorant as to the nuances of New Jersey law. The only issue is whether DeVry's preferred belief is worthy of credence or whether it was driven by discriminatory animus.

plaintiff did not show pretext where plaintiff's termination was consistent with corrective action

policy).  Here, there is simply nothing in the record, except Plaintiffs' allegations, to support an

inference of discriminatory animus such that DeVry's proffered reason for Plaintiffs' termination

could be considered pretextual by a factfinder.[15]

### C.    Retaliation

Plaintiffs apparently also bring a claim of retaliation.  While the Complaint does not

detail any purported retaliatory activities, *per se*, the Court assumes the existence of the claim

based on the drafting of the relevant cause of action.  Moreover, in his deposition, Jones asserted

that DeVry retaliated against him after he filed his PHRC Charge of Discrimination.

In order to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he or

she engaged in a protected activity; (2) that his or her employer took an adverse employment

action; and (3) a causal link between the two.  Witcher v. Sodexho, Inc., 247 Fed. Appx. 328,

331 (3d Cir. 2007) (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002)).

To obtain summary judgment, the employer must show that the trier of fact could not conclude,

as a matter of law, (1) that retaliatory animus played a role in the employer's decision-making

process and (2) that it had a determinative effect on the outcome of the process.  Morrissey v.

Luzerne County Cmty. College, 117 Fed. Appx. 809, 815 (3d Cir. 2004) (citing Krouse v.

American Sterilizer, Co., 126 F.3d 494, 501 (3d Cir. 1997)).  "[T]he mere fact that adverse

employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the

---

[15] The Court notes that it is constrained to limit its analysis to the framework discussed
*supra*, because Plaintiffs claims are those of discrimination brought pursuant to Title VII and the
PHRA.  The Court makes no determination as to whether Plaintiffs may have some other course
of action (*e.g.*, breach of contract) against DeVry.

plaintiff's burden of demonstrating a causal link between two events." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (citing Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991)) (holding that the timing of Quiroga's alleged constructive discharge was not independently sufficient to prove it was caused by his complaint).

The Court agrees with DeVry that there is nothing Jones can point to that reasonably suggests that retaliatory animus played a role in DeVry's decision to terminate him.  DeVry had already been investigating the laptop thefts for a month, and DeVry had already received the relevant information from Detective Whisler about Jones's criminal background.  Jones had already been interviewed and put on notice that he was being investigated for falsification of his employment application.  Jones was also aware that his employment application specified that the punishment for dishonesty could include termination.  Jones has conceded that at no time during his termination meeting did anyone discuss his pending PHRC Charge of Discrimination. Jones has also admitted that he never discussed his PHRC Charge of Discrimination with anyone at DeVry other than Nelson and Hinchee, and that he did not even tell those two individuals what specific allegations it actually contained.

The Court finds that there is no record evidence from which a trier of fact could conclude that Jones's subsequent termination was retaliatory.  Moreover, the record reflects that it was Jones's own actions that created the temporal proximity between the PHRC Charge of Discrimination and Jones's termination.  Accordingly, Plaintiffs have not established a *prima*

*facie* case for retaliation sufficient to survive summary judgment.[16]

      **D.**    **Hostile Work Environment**

Although the existence of a hostile work environment claim is far from clear upon reading of the Complaint, Defendant moves for summary judgment on any such claim.  When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should be granted.  Fed. R. Civ. P. 56(e)(2).  Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.  See, e.g., Jackson v. J. Lewis Crozer Library, No. 07-0481, 2007 U.S. Dist. LEXIS 61582 (E.D. Pa. Aug. 22, 2007);  Mason v. Abington Twp. Police Dep't, No. 01-1799, 2002 U.S. Dist. LEXIS 17315 (E.D. Pa. Sept. 12, 2002);.  Here, Plaintiffs fail to rebut (or, indeed, even mention) Defendant's motion as it pertains to a purported hostile work environment claim.  Accordingly, the Court will treat that portion of Defendant's motion as unopposed.

**IV.**    **Conclusion**

For the foregoing reasons, the Court will grant DeVry's Motion for Summary Judgment. An appropriate Order follows.

---

[16] Even if one were to assume, *arguendo*, that Plaintiffs did make out a *prima facie* case for retaliation, for the reasons discussed *supra*, Plaintiffs cannot demonstrate that DeVry's reason for Jones's termination was pretextual.  Once again, the record, uncontradicted except for Jones's own testimony, reflects that DeVry had a good faith belief that he had falsified his employment application by failing to disclose his criminal background.  It is not the role of the Court to determine whether DeVry's business judgment in terminating Jones was wise.  Jones has presented no evidence of substance that DeVry did not genuinely believe that Jones had falsified his employment application or that DeVry's reason for terminating him was a lie.